**STATE of Utah, Plaintiff and Appellee,**

v.

**Josafat TRUJILLO–MARTINEZ, Defendant and Appellant.**

**No. 900464–CA.**

Court of Appeals of Utah.

June 7, 1991.

**78.** *First Nat'l Bank of Boston v. County Bd. of* *Equalization,* 799 P.2d 1163, 1166 (Utah 1990).

Stephen R. McCaughey (argued), Hatch & McCaughey, Salt Lake City, for defendant and appellant.

R. Paul Van Dam, State Atty. Gen., Judith S.H. Atherton (argued), Asst. Atty. Gen., for the State.

Before BENCH, GARFF and RUSSON, JJ.

1. In fact, Chacon testified at the hearing on Martinez's motion to withdraw his guilty plea that Spanish is his native tongue and English is his second language.

2. The trial court erroneously informed Martinez that rape was a second degree felony. Later in the hearing, this error was discovered and the trial court conducted the following inquiry:

RUSSON, Judge:

Josafat Trujillo–Martinez appeals from an order denying his motion to withdraw his guilty plea. We affirm.

## FACTS

On August 30, 1988, Josafat Trujillo–Martinez (Martinez) was charged with aggravated sexual assault, a first degree felony, in violation of Utah Code Ann. § 76–5–405 (1990), and aggravated kidnapping, a first degree felony, in violation of Utah Code Ann. § 76–5–302 (1990). On October 26, 1988, Martinez pleaded guilty to rape, a first degree felony, in violation of Utah Code Ann. § 76–5–402 (1990), and was sentenced to serve five years to life in the Utah State Prison.

At the hearing on his plea, Martinez was represented by Solomon J. Chacon, an attorney who speaks both English and Spanish fluently.[1] Chacon informed the court that Martinez understood a little bit of English, and, at the court's request and with Martinez's approval, Chacon agreed to translate for Martinez. The following colloquy ensued:

THE COURT: Mr. Martinez, you have heard the statement made by your attorney and agreed to by the State indicating that it's your desire to plead guilty to a lesser included offense of Count I, being rape, a second degree felony?[2]

MARTINEZ: Yes.

THE COURT: And upon your doing so, the State would move to amend Count I from aggravated sexual assault, a first degree felony, to rape, a first degree felony; and move to dismiss Count II, aggravated kidnapping, a first degree felony.

MARTINEZ: Si.

THE COURT: Do you understand that you are pleading guilty to rape, a first degree felony, and not a second degree felony?
MARTINEZ: Yes. I understand.
THE COURT: Now, do you wish your signature to remain affixed and your plea to remain as it has been entered?
MARTINEZ: Yes.
This dialogue was clearly sufficient to correct the earlier erroneous statement by the court.

THE COURT: Have you gone over an affidavit with your attorney?

MARTINEZ: Yes.

THE COURT: Do you understand the contents of that document?

CHACON: He says, "What you explain to me?" And he says, "Yes."

THE COURT: And do you understand if you sign that document, you will be pleading guilty as I have stated to you?

MARTINEZ: Si.

CHACON: Yes.

THE COURT: You will be waiving your right to a trial, your right to confront witnesses, and your right to appeal to a higher court?

MARTINEZ: Si.

CHACON: Yes.

THE COURT: And do you further understand that if you were to go to trial in this matter, you would not be compelled to take the witness stand and testify?

MARTINEZ: Yes.

THE COURT: Also, do you understand that if you were to go to trial in this matter, the State would have the burden of proving to the satisfaction of all eight members of the jury the elements of the crime with which you were charged?

MARTINEZ: Yes.

THE COURT: Are you presently under the influence of any type of alcohol or narcotics or medication that would impair your ability to exercise your free consent?

MARTINEZ: No, I am not under the influence of anything.

THE COURT: Are you doing this of your own free will and choice?

MARTINEZ: Yes.

THE COURT: How do you plead, sir?

MARTINEZ: Yes. It's guilty.

THE COURT: You may proceed and execute your affidavit.

CHACON: Your Honor, I asked him to sign it a minute ago, in my presence.

THE COURT: Now, let me ask you, sir. And ask him this, Mr. Chacon. Did you sign that affidavit here in court this morning?

MARTINEZ: Yes.

THE COURT: And do you wish your signature to remain affixed to that document after you have heard what I have said to you?

MARTINEZ: Yes. It's fine.

On March 13, 1990, Martinez filed a motion to withdraw his guilty plea, on the basis that it had not been knowingly and voluntarily made, pursuant to Utah Rule of Criminal Procedure 11(5) (formerly Rule 11(e)).[3] At the hearing on that motion, Chacon testified that he had reviewed the affidavit with Martinez immediately before the change of plea hearing. The affidavit, which was in strict compliance with Rule 11, specified that: (1) his plea was entered voluntarily; (2) he was aware of his rights against compulsory self-incrimination, to a jury trial, and to confront and cross-examine witnesses against him, and that by entering his plea, he waived all those rights; (3) he understood the nature and elements of the offense to which he entered his

3. Rule 11(5) provides:

The court may refuse to accept a plea of guilty or no contest, and may not accept the plea until the court has found:

(a) if the defendant is not represented by counsel, he has knowingly waived his right to counsel and does not desire counsel;

(b) the plea is voluntarily made;

(c) the defendant knows he has rights against compulsory self-incrimination, to a jury trial, and to confront and cross-examine in open court the witnesses against him, and that by entering the plea he waives all of those rights;

(d) the defendant understands the nature and elements of the offense to which he is

entering the plea; that upon trial the prosecution would have the burden of proving each of those elements beyond a reasonable doubt; and that the plea is an admission of all those elements;

(e) the defendant knows the minimum and maximum sentence that may be imposed upon him for each offense to which a plea is entered, including the possibility of the imposition of consecutive sentences;

(f) if the tendered plea is a result of a prior plea discussion and plea agreement, and if so, what agreement has been reached; and

(g) the defendant has been advised of the time limits for filing any motion to withdraw a plea of guilty or no contest.

plea;[4] (4) upon trial, the prosecution would have the burden of proving each element of the charge beyond a reasonable doubt; (5) his plea was an admission of all of the elements of the charge against him; (6) he was aware of the minimum and maximum sentences which could be imposed upon him;[5] and (7) his plea was the result of a plea bargain, the provisions of which were attached to the affidavit as exhibit number one. Chacon further testified that he had additionally discussed both the potential punishment and the nature and elements of the charge with Martinez on several prior occasions. Following this hearing, the motion was denied.

### ISSUE

Martinez presents the following issue on appeal: did the trial court err in denying Martinez's motion for withdrawal of his guilty plea and holding that the said plea was knowingly and voluntarily made in compliance with Rule 11?

### STANDARD OF REVIEW

 We will not disturb a trial court's determination that a defendant has failed to show good cause for withdrawal of a guilty plea unless it clearly appears that the trial court abused its discretion. *State v. Mildenhall*, 747 P.2d 422, 424 (Utah 1987); *State v. Forsyth*, 560 P.2d 337, 339 (Utah 1977). It is an abuse of discretion to refuse to allow a defendant to withdraw a guilty plea which was not made in strict compliance with Rule 11. *State v. Gibbons*, 740 P.2d 1309, 1312–14 (Utah 1987).

### STRICT COMPLIANCE WITH RULE 11

 In the case at bar, Martinez contends that the trial judge did not meet strict compliance with Rule 11 because he failed to specifically inquire during the colloquy as to Martinez's understanding of the nature and elements of his charge, or as to whether he understood the minimum and maximum sentences which could be imposed. We disagree.

In *State v. Gibbons*, 740 P.2d 1309, 1312 (Utah 1987), the Utah Supreme Court placed upon the trial judge the burden of ensuring strict compliance with Rule 11. Subsequently, in *State v. Smith*, 777 P.2d 464 (Utah 1989), the Utah Supreme Court clarified the *Gibbons* rule, stating:

> In order for defendant's guilty plea to be valid and in compliance with rule 11(e)(5) of the Utah Rules of Criminal Procedure and *State v. Gibbons*, the record must show that he was unequivocably [sic] and clearly informed about the sentence that would be imposed. Such evidence does not exist *either* in the affidavit regarding the plea bargain *or* in the transcript of the guilty plea. Thus, rule 11(e) and *State v. Gibbons* require the vacating of defendant's guilty plea on the ground that it was not knowingly and voluntarily made.

*Id.* at 466 (emphasis added).

Although *Gibbons* does require that Rule 11 be strictly complied with, it does not hold that the trial court must, in every case, perform a verbatim recitation of each and every statement made in the defendant's affidavit. In fact, *Smith* explicitly held that "the record," not the colloquy alone, must establish that Rule 11 was complied with. *Id.* Recently, another panel of this court on facts similar to the present case also concluded that "we examine the affidavit and colloquy together to determine whether a plea of guilty ... has been entered in strict compliance with Rule 11." *State v. Smith*, 812 P.2d 470, 476 (Utah App.1991). *See also State v. Valencia*, 776 P.2d 1332, 1335 (Utah App.1989) (per curiam) ("When an affidavit is used to

---

4. Specifically, the affidavit stated that "[t]he elements of the crime of which I am charged are as follows: A person commits rape when the actor has sexual intercourse with another person, not the actor's spouse, without the victim's consent." And also, "[m]y conduct, and the conduct of other persons for which I am criminally liable, that constitutes the elements of the crime charged are as follows: On August 26, 1988, the defendant had sexual intercourse with [the victim], a person who was not his wife, without her consent."

5. As to the potential punishment, the affidavit specified: "5 yrs to Life, Utah State Prison, and $10,000.00 Fine."

evidence defendant's knowledge and willingness to plead guilty, the trial court's examination of defendant regarding the affidavit's contents should be sufficiently detailed and extensive to provide a factual basis to conclude from defendant's responses that his decision was knowing and voluntary."); *State v. Smith*, 812 P.2d at 481–82 (Russon, J., concurring) (an in-depth explanation of the reasons for using both the affidavit and the colloquy). *But see State v. Pharris*, 798 P.2d 772, 777 (Utah App.), *cert. denied*, 804 P.2d 1232 (Utah 1990) (holding that the inclusion of some Rule 11 provisions in the affidavit alone is reversible error). Therefore, we must turn our attention to whether the affidavit and colloquy in concert establish Martinez's knowing and voluntary consent.

### The Affidavit

As noted above, Martinez's affidavit strictly complied with all of the elements of Rule 11. The threshold question therefore is whether Martinez understood that document when he signed it.

Martinez's own testimony at the colloquy evidences that he knowingly signed his affidavit. When questioned by the trial judge, he indicated that he had reviewed the affidavit with his attorney, that he understood the contents of that document, that by signing it he was pleading guilty, and that he wished to sign the document.

Also, the testimony of Martinez's attorney, Solomon J. Chacon, at the hearing on Martinez's motion to withdraw his guilty plea, supports the trial court's ruling that Martinez was fully informed as to the contents of the affidavit which he signed. Chacon testified that "[o]n the date in question when he entered his plea, Mr. Trujillo–Martinez and I went out in the hallway and I reviewed the document with him." And further, "[a]fter I have reviewed it with him verbatim and he doesn't follow it verbatim, then I do paraphrase it in words that he is able to understand, yes. That's what I did." Explanation of the technical legal wording of the affidavit by a competent defense counsel, who is fluent in a defendant's native language, is of great benefit.

When done in addition to a rigid verbatim translation of the document, the paraphrasing only increases the likelihood that the defendant understands what he is signing. Additionally, Chacon testified that he discussed the potential punishment with Martinez on "no less than three or four occasions" and the nature and the elements of the charge "two or three other times in [Chacon's] office," as well as immediately before the hearing. Taken together, the statements of Martinez and Chacon clearly establish that Martinez understood the contents of the affidavit he signed.

### The Colloquy

Martinez cites the following errors in the colloquy: (1) no inquiry as to his understanding of the nature and elements of his charge, or as to whether he understood the minimum and maximum sentences which could be imposed; (2) insufficient findings of fact as to the elements of Rule 11; and (3) an erroneous statement of the burden of proof on the State.

As to Martinez's first point, the lack of inquiry as to these matters is not error because such was sufficiently treated in his affidavit. His attorney reviewed the provisions of the affidavit with Martinez verbatim, and by paraphrasing where necessary, and Martinez informed the judge at the time of the plea that he had reviewed the affidavit with his attorney and understood the contents. Since his affidavit strictly complied with Rule 11, and the colloquy establishes that Martinez knowingly and voluntarily signed the affidavit, the trial court did not abuse its discretion in not questioning Martinez as to these matters.

Concerning the sufficiency of the findings of fact, it is well settled that "[f]ailure of the trial court to make findings on all material issues is reversible error unless the facts in the record are 'clear, uncontroverted, and capable of supporting only a finding in favor of the judgment.'" *Acton v. Deliran*, 737 P.2d 996, 999 (Utah 1987) (quoting *Kinkella v. Baugh*, 660 P.2d 233, 236 (Utah 1983)); *see also State v. Palmer*, 803 P.2d 1249, 1253 (Utah App.1990). Applying this to the case

at bar, the uncontroverted facts indicate that the trial court questioned Martinez about his plea, reviewed the affidavit, and then signed an order attached to Martinez's affidavit, which stated, "[b]ased upon facts set forth in the foregoing statement and certification, the court finds the defendant's plea of guilty is freely and voluntarily made and it is so ordered that the defendant's plea of (guilty) to the charge set forth in the statement be accepted and entered." Given that Martinez's affidavit covered all of the Rule 11 elements, although the trial judge did not specifically enumerate findings with regard to each provision of Rule 11, his finding that Martinez's plea was freely and voluntarily made necessarily incorporates a finding concerning each element of Rule 11 within his conclusion that the plea was freely and voluntarily made.

■ Of somewhat greater concern is the following statement by the trial judge during the colloquy: "Also, do you understand that if you were to go to trial in this matter, the State would have the burden of proving to the satisfaction of all eight members of the jury the elements of the crime with which you were charged?" However, because Martinez was informed of the correct burden of proof in his affidavit, we do not find the absence of the specific language "beyond a reasonable doubt" from the colloquy to provide sufficient grounds on which to find that Martinez did not enter his plea knowingly.

### CONCLUSION

We hold that Martinez entered his plea of guilty knowingly and voluntarily, and therefore the trial court did not abuse its discretion in denying his motion to withdraw his guilty plea. Accordingly, we affirm.

BENCH and GARFF, JJ., concur.